UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **TIMOTHY LEE SOLLOWAY,**<br>Petitioner,<br>vs.<br><br>**ADAM DOUGLAS,**[1]<br>Respondent. | **2:18-CV-11679-TGB-PTM**<br>HON. TERRENCE G. BERG<br>**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS (ECF NO. 1),**<br>**DENYING A CERTIFICATE OF APPEALABILITY, AND**<br>**DENYING PETITIONER LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL** |

This is a pro se habeas action brought by Petitioner Timothy Lee Solloway ("Solloway"), a Michigan prisoner seeking relief under 28 U.S.C. § 2254. Solloway challenges his Cass County bench-trial conviction of first-degree criminal sexual conduct (CSC-I) (person under 13), Mich. Comp. Laws § 750.520b(1)(a). Solloway seeks habeas review on grounds of ineffective assistance of trial counsel and actual innocence. For the

[1] The proper respondent in a habeas action is the petitioner's custodian. *See* Rule 2(a), Rules Governing Section 2254 Cases, 28 U.S.C. § 2254. Petitioner is presently incarcerated at the Saginaw Correctional Facility where Adam Douglas is the Warden. The Court directs the Clerk of Court to amend the case caption to substitute Adam Douglas as the Respondent.

reasons set forth, the Court **DENIES** the Habeas Petition and **DENIES** a certificate of appealability. The Court **DENIES** Solloway leave to proceed in forma pauperis, that is, without prepaying the filing fees that would ordinarily apply, on appeal.

## I. BACKGROUND

Solloway was accused and convicted of sexually assaulting his nine-year-old son, MM. ECF No. 15-4, PageID.669. The relevant facts are quoted directly because they are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> On the morning of July 22, 2013, defendant's then nine-year-old son "MM" rode the bus from summer school to defendant's residence, where he was supposed to spend the remainder of the summer. That evening, MM fell asleep in the bedroom of defendant's one-bedroom apartment with his pajamas on, and defendant went to bed in the living room. According to MM, he woke up during the night with defendant on top of him, and MM no longer had his pajamas on. MM testified that defendant was facing him and "shaking up and down." MM told defendant to get off, but defendant said, "No." Eventually, MM saw defendant unzip his pants and "stick his peebug out." Defendant then "flipped [MM] over" and "put his peebug in [MM's] butt." Although MM testified that he experienced pain "on [his] butt" that day, he did not tell anyone what happened.
>
> Two days after the incident, MM noticed some rectal bleeding after he went to the bathroom at school. MM told his teacher that he was bleeding. His teacher sent him to the principal, who thereafter called MM's mother (defendant's ex-wife), to pick MM up. While MM was waiting for his mother, a police officer came to talk to him at school. MM told the officer that

> he was "bleeding from [his] butt" and that he had just been "molested [by defendant] a couple of days" before. Thereafter, MM's mother arrived at the school with MM's grandpa and stepfather, and they took MM directly to the hospital. On the way, MM told the three of them what had happened. A physical examination of MM at the hospital revealed injuries consistent with his account of the sexual assault.

*People v. Solloway*, 316 Mich. App. 174, 178–79 (2016).

In 2014, Solloway was convicted by bench trial of first-degree criminal sexual conduct (person under 13) (CSC-I), Mich. Comp. Laws § 750.520b(1)(a), and two counts of failure to comply with Michigan's Sex Offender Registration Act ("SORA") in the Cass County Circuit Court. ECF No. 15-3, PageID.658. The trial court sentenced him as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to concurrent terms of life imprisonment for his criminal-sexual-conduct conviction and three to seven years for his SORA convictions. ECF No. 15-4, PageID.669, 681–82.

Solloway filed a direct appeal in the Michigan Court of Appeals. *See* ECF No. 15-21, PageID.885. Through counsel, he raised claims concerning the sufficiency of the evidence for all convictions and ineffective assistance of trial counsel for failing to investigate. ECF No. 15-21, PageID.886, 891. Solloway also submitted his own brief, known in Michigan as a Standard 4 brief, in which he raised issues concerning the ineffective assistance of trial counsel, evidentiary error, the right to present a defense, and prosecutorial misconduct. ECF No. 15-21,

PageID.1030–31. The Michigan Court of Appeals affirmed his CSC-I conviction, but vacated his convictions for failing to comply with SORA and remanded for correction of the presentence investigation report and the judgment of sentence. *Solloway*, 316 Mich. App. at 203. Solloway applied for leave to appeal in the Michigan Supreme Court. ECF No. 15-22, PageID.1054. On May 24, 2017, the state supreme court denied the application on the basis that it "was not persuaded that the questions presented should be reviewed by this [c]ourt." *People v. Solloway*, 500 Mich. 997, 997 (2017).

On July 26, 2017, Solloway returned to the trial court and filed a motion for relief from judgment containing the following claims:

> I. Defendant's newly discovered evidence – his son recanting his trial testimony requires this Court to order a *Walker* hearing in the interest of justice and vacate Defendant's conviction based on the newly discovered evidence.
>
> II. The SANE Nurse being allowed to testify to hearsay and stating to the judge that Defendant sexually abused the alleged victim violated the Confrontation Clause and deprived Defendant of a fair trial requires reversal as a matter of law.
>
> III. Defendant was denied the effective assistance of trial counsel contrary to the Sixth Amendment of the U.S. Constitution, which deprived Defendant of a fair trial when counsel failed to request a[n] expert, object to inadmissible expert testimony, to call witnesses that were exculpatory to Defendant's defense and to call an independent DNA expert requires this Court to grant

new trial.

IV. The trial court erred by not allowing Defendant to introduce evidence that Defendant's ex-wife coerced Defendant's son to make false allegations against Defendant prior to his allegations in this case.

V. The trial judge's findings are contrary to the facts and whether the judge failed to resolve credibility issues in his findings which requires reversal and a new trial.

ECF No. 15-9, PageID.735–36.

On or about January 9, 2018, the trial court denied that motion on the basis that the issues presented were addressed in Solloway's direct appeal and his claims did not entitle him to relief under Michigan Court Rules 6.502(C) or 6.508(G)(2). ECF No. 15-10, PageID.779. Solloway sought leave to appeal the decision, which the Michigan Court of Appeals denied on September 4, 2018. ECF No. 15-23, PageID.1137. On or about November 2, 2018, he filed a timely application for leave to appeal to the Michigan Supreme Court, as well as a motion to remand his case to the trial court for an evidentiary hearing. ECF No. 15-24, PageID.1211.

While his appeal was pending in the state appellate court, Solloway filed his present petition in this Court, raising the sole claim of ineffective assistance of trial counsel. ECF No. 1. Solloway also filed a motion to stay and hold the petition in abeyance so that he could exhaust additional claims in the state courts. ECF No. 5. On January 15, 2019, the Court granted the motion to stay and administratively closed the case. ECF No. 7. His appeal and motion remained pending before the state supreme

court when the Court granted the motion to stay.

On May 24, 2019, the Michigan Supreme Court vacated the trial court's order denying the motion for relief from judgment. *People v. Solloway*, 503 Mich. 1033, 1033 (2019). It held that

> [t]he circuit court erred by: (1) purporting to deny the defendant's motion as not complying with MCR 6.502(C), when the proper relief for such a defect is, under MCR 6.502(D), either returning the motion to the defendant or adjudicating the motion on the merits notwithstanding the defect; (2) treating the defendant's motion for relief from judgment as a successive motion; and (3) concluding that the claim of new evidence had been previously resolved against the defendant on appeal.

*Id.* The court ordered that Solloway's case be remanded to the trial court for re-evaluation if Solloway's motion was not returned to him under Michigan Court Rule 6.502(D). *Id.*

On August 9, 2019, the trial court issued a letter returning the motion for relief from judgment to Solloway under Michigan Court Rule 6.502(G)(1). ECF No. 15-11, PageID.780. Solloway subsequently filed two other motions for relief from judgment in the trial court raising a claim of actual innocence based on the victim's recanted testimony, which the trial court returned to him again citing Michigan Court Rule 6.502(G)(1).[2] ECF No. 15-1, PageID.309; ECF No. 15-24, PageID.1334.

[2] While it appears that the trial court did not return the motions under Mich. Ct. R. 6.502(D) as specified by the Michigan Supreme Court, this error does not affect the Court's resolution of Solloway's claims.

Solloway did not successfully refile a motion for relief from judgment in the trial court.

On May 30, 2023, Solloway returned to this Court and filed a motion to lift the stay. ECF No. 9. On October 4, 2023, Solloway subsequently filed a motion to amend the petition to add an additional claim of actual innocence. ECF No. 11. On January 3, 2024, this Court entered an order reopening the case, ECF No. 12, and also granted Solloway's motion to amend the petition. ECF No. 16.

The Court understands the amended petition raises the following claims:

I. Ineffective Assistance of Trial Counsel

II. Petitioner claims that he is actually innocent of this offense and offers proof.

ECF No. 1, PageID.5; ECF No. 11, PageID.148.

Respondent filed an answer to the amended petition, contending that three of Solloway's subclaims for ineffective assistance of trial counsel are procedurally defaulted and all claims lack merit. ECF No. 14.

## II. LEGAL STANDARD

Section 2254 of Title 28 of the U.S. Code, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was

> adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v.*

*Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Therefore, to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

## III. DISCUSSION

### A. Procedural Default

In his petition, Solloway raises four ineffective assistance of counsel subclaims regarding: (1) counsel's failure to investigate; (2) counsel's failure to properly impeach MM; (3) counsel's failure to "not try[ ] harder to excuse himself"; and (4) counsel's failure to object to or preclude witnesses testifying at trial. ECF No. 1, PageID.5, 15–19. Respondent contends that subclaims 2, 3, and 4 are procedurally defaulted because they were not properly presented to the state courts and Solloway now lacks an available state remedy. ECF No. 14, PageID.256. Based on the state court record before the Court, there is some question as to whether Solloway's ineffective assistance of claims are procedurally defaulted on this basis.

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies

available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules has closed off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Michigan law permits only one post-conviction motion for relief from judgment, with limited exceptions. *See* Mich. Ct. R. 6.502(G)(1).

In this case, the Michigan Supreme Court vacated the trial court's order denying Solloway's first motion for relief from judgment and remanded the case for the trial court's re-evaluation. 503 Mich. at 1033. It noted that the trial court erred, in part, by treating the motion as a successive motion. *Id.* On remand, the trial court did not review the motion on the merits, but returned the motion to Solloway, as permitted under the Michigan Supreme Court's order. ECF No. 15-11, PageID.780. While Solloway later filed other motions for relief from judgment, they

were each returned to him. ECF No. 15-1, PageID.309; ECF No. 15-24, PageID.1334. Based on these facts, it appears Solloway has not successfully filed a motion for relief from judgment in the state court and has a remaining available remedy to raise these claims. So there appears to be a question as to whether the challenged claims are unexhausted, not procedurally defaulted.

However, whether the claims are procedurally defaulted or unexhausted is not an analysis this Court needs to undertake. Procedural default is not a jurisdictional bar to review the merits of a habeas petition. *See Trest v. Cain*, 522 U.S. 87, 89 (1997); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural default issue before deciding against the petitioner on the merits.") (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

Likewise, exhaustion is not a jurisdictional issue, and unexhausted claims may be decided on the merits if clearly meritless. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987). In the interest of efficiency and completeness, this Court will proceed directly to analyze the merits of Solloway's habeas claims. *See Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020) (noting courts may "reach the merits of a petitioner's claim" before analyzing procedural default or exhaustion, especially when the "procedural issues are complicated" but the "merits are easily resolvable").

## B. Merits

### *1. Ineffective Assistance of Counsel*

Solloway argues that trial counsel was ineffective for: (1) failing to investigate his case, (2) failing to properly impeach MM, (3) failing to excuse himself as counsel, and (4) failing to prevent certain witnesses from testifying at trial. ECF No. 1, PageID.5, 15–19.

The Michigan Court of Appeals denied Solloway's claim regarding counsel's failure to investigate on the merits. *Solloway*, 316 Mich. App. at 189. Accordingly, this claim is entitled to deferential review under AEDPA. *See Moore v. Mitchell*, 708 F.3d 760, 778 (6th Cir. 2013).

However, because Solloway's subclaims (2), (3), and (4) were not adjudicated on the merits in state court, this Court applies the "pre-AEDPA standard of review: de novo for questions of law (including mixed questions of law and fact), and clear error for questions of fact." *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011); *see* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

a. *Strickland v. Washington* test

An ineffective-assistance-of-counsel claim has two components. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Id.* at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id.* at 694.

b. Failure to Investigate

Solloway argues that counsel failed to investigate potential witnesses, a medical expert, MM's medical records, and his alibi. ECF No. 1, PageID.15–17 The Michigan Court of Appeals rejected Solloway's arguments on appeal, concluding, in relevant part, that:

> Second, "[d]ecisions regarding . . . whether to call or question witnesses are presumed to be matters of trial strategy." *People v. Rockey*, 237 Mich. App. 74, 76, 601 N.W.2d 887 (1999). Thus, whether defense counsel should have (1) presented the victim's counselor as a witness, (2) consulted or produced an expert medical witness, or (3) presented "layman testimony" that would establish MM's mother had coerced MM into making false accusations against defendant in the past were

matters of trial strategy. "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v. Dixon*, 263 Mich. App. 393, 398, 688 N.W.2d 308 (2004). Defendant does not argue why it was necessary for defense counsel to procure an expert medical witness to testify at trial, nor does he explain how the missing testimony of MM's counselor would have assisted his case or what the missing testimony would have been. Because defendant fails to explain what this missing testimony would have been or how it would have assisted his case, he has not demonstrated that defense counsel's failure to procure an expert medical witness or call MM's counselor as a witness contravened trial strategy and deprived him of a substantial defense. *Rockey*, 237 Mich. App. at 76, 601 N.W.2d 887; *Dixon*, 263 Mich. App. at 398, 688 N.W.2d 308.

Third, defense counsel did, in fact, pursue the theory at trial that MM was coerced into making allegations against defendant. Defense counsel attempted to elicit testimony from MM's mother and Justin Pangle (a tribal police officer), two lay witnesses who could have potentially supported his defense theory. Additionally, defense counsel presented Cynthia Lunk as a lay witness in support of this coercion theory. The fact that defense counsel's strategy was ultimately unsuccessful does not render him ineffective. *People v. Kevorkian*, 248 Mich. App. 373, 414–415, 639 N.W.2d 291 (2001). Moreover, defendant fails to identify on appeal any other lay witness whom defense counsel should have produced to testify further in this regard.

Lastly, defense counsel was not ineffective for failing to produce MM's medical records. The decision of what evidence to present is also presumed to be a matter of trial strategy. *Rockey*, 237 Mich. App. at 76, 601 N.W.2d 887. At trial, medical records from MM's examination were admitted through O'Brien's testimony. On appeal, defendant does not point to any other medical records that would have been

> relevant to the instant case. Ostensibly, defendant wanted defense counsel to produce MM's medical records relating to his alleged bowel movement problems; however, defendant fails to establish that these medical records even exist. Therefore, defendant has not overcome the presumption of trial strategy with respect to the production of this evidence. *See id.*

*Solloway*, 316 Mich. App. at 189–91.

Solloway fails to show that the state court unreasonably applied federal law or contravened clearly established Supreme Court precedent. It is well-settled that defense counsel must conduct a reasonable investigation into the facts of a defendant's case or make a reasonable determination that such investigation is unnecessary. *Wiggins v. Smith*, 539 U.S. 510, 522–23 (2003); *Strickland*, 466 U.S. at 691; *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d at 258. Decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. *See id.* When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522–23. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

The Court turns first to Solloway's argument regarding counsel's failure to investigate witnesses. He argues that had counsel investigated MM's summer schoolteacher and his cousins, Amy Solloway and Stephen Yeager, these witnesses would have established his defense theory that MM's mother coached MM to falsely accuse Solloway of child molestation. ECF No. 1, PageID.15–16.

As noted by the court of appeals, defense counsel pursued this theory during trial. *Solloway*, 316 Mich. App. at 190. Defense counsel attempted to elicit testimony from MM's mother during cross-examination that she had "made allegations that [MM] was molested before." ECF No. 15-2, PageID.470. While the trial court precluded the witness's answer based on hearsay, *id.*, MM's mother testified that there was some ill will between her and Solloway resulting from his efforts to change the custody arrangements, *id.* at PageID.469–70. Additionally, defense counsel called Solloway's aunt as a witness to corroborate the theory that MM's mother coerced him (MM) into making statements against his will. *See* ECF No. 15-3, PageID.635 ("[H]e proceeded to say that, 'My mom said that I had to say it or she'd beat me.'"). Because counsel pursued this theory, Solloway cannot show that he was deprived of a substantial defense for failing to investigate these other witnesses, who would have only reiterated the point that the mother coached MM to falsely accuse Solloway of sexual assault. Defense counsel cannot be ineffective if the evidence that counsel failed to offer "can reasonably be

expected to be only cumulative." *Bobby v. Van Hook*, 558 U.S. 4, 11 (2009). Accordingly, the Michigan Court of Appeals did not unreasonably apply federal law when denying this claim.

Solloway next argues that counsel was ineffective for failing to investigate his gastroenterologist, who he says would have opined that MM and Solloway both suffer from the same hereditary rectal bleeding condition. ECF No. 1, PageID.15. He also argues that MM's medical records would have provided an alternative explanation as to why MM experienced rectal bleeding shortly after the alleged sexual assault.[3] *Id.* at PageID.15–16.

A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006). Solloway has not offered any substantial evidence that such an expert witness would have testified and what the content of this witness's testimony would have been. In the absence of such proof, Solloway is unable to establish that he was prejudiced by counsel's failure to call an expert witness to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

[3] The Court notes that the trial court heard MM testimony's that he experienced rectal bleeding prior to the sexual assault and had experienced this condition for "a long time." ECF No. 15-2, PageID.377. So Solloway's theory that MM's rectal bleeding was a hereditary condition was presented at trial regardless of any other alleged trial counsel error.

Likewise, Solloway offered neither to this Court nor the Michigan courts any evidence that MM's medical records exist or that they would contain any exculpatory information. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams*, 376 F. 3d 520, 527 (6th Cir. 2004) (internal quotation omitted). Solloway is not entitled to relief on this claim.

Lastly, Solloway argues that counsel failed to investigate his alibi defense that he was on the phone with his fiancée until 2 a.m. the night of the alleged assault. ECF No. 1, PageID.16. However, there is nothing in the state court record suggesting that Solloway's proposed alibi would have resulted in an acquittal. Indeed, MM did not testify that the sexual assault occurred at any specific time during the night. Defense counsel did not act unreasonably by failing to pursue this defense, nor has Solloway established prejudice.

c. Failure to Impeach

Next, Solloway argues that counsel was ineffective for failing to call the first responding tribal officer to impeach MM's testimony that he told the officer that "[Solloway] committed this offense." ECF No. 1, PageID.17. Solloway argues that a police report indicates that the officer did not speak with MM at all. *Id.* He also asserts that counsel should

have questioned MM more thoroughly on cross-examination. *Id.* at PageID.18.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

Solloway has not provided the tribal officer's proffered testimony or the police report, which he claims would have refuted MM's testimony that he spoke with this officer. Without support, Solloway has not shown that the tribal officer's testimony would have impeached MM's testimony. Again, conclusory allegations of ineffective assistance of counsel do not provide a basis for habeas relief. *See Workman*, 178 F.3d at 771.

Moreover, although Solloway contends that counsel should have been more thorough in his cross-examination of MM, the mere fact that other avenues of impeachment may have existed does not render counsel ineffective; counsel need not "develop every bit of testimony through all available inconsistent statements." *Poyner v. Iowa*, 990 F.2d 435, 438 (8th Cir. 1993); *see also United States v. Kozinski*, 16 F.3d 795, 817 (7th Cir. 1994) (counsel not ineffective where counsel could have elicited additional impeachment information on cross-examination). In light of the great deference given to counsel's judgment in matters of cross-

examination and impeachment, Solloway fails to show that his trial counsel's performance was deficient. Therefore, Solloway is not entitled to relief on this claim.

d. Failure to Withdraw

Solloway next argues that defense counsel was ineffective for failing to successfully excuse himself from the case. ECF No. 1, PageID.18. While Solloway does not expand further on this argument, he argues in more detail that counsel performed deficiently by persuading him to accept a bench trial and failing to employ a successful trial strategy. *Id.* Neither of Solloway's arguments warrant habeas relief.

First, the state court record shows that Solloway knowingly and voluntarily waived his right to a jury trial. ECF No. 15-2, PageID.315. He has not demonstrated a reasonable probability that the result of his criminal trial would have been different if trial counsel had not advised him to have a bench trial. Second, to the extent he complains of counsel's losing defense strategy, "the Constitution does not guarantee every defendant a successful defense." *Schauer v. McKee*, 401 F. App'x 97, 100 (6th Cir. 2010) (cleaned up). "[T]actical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001). Solloway is not entitled to relief on this claim.

e. Failure to Object to Improper Testimony

Lastly, Solloway argues that counsel was ineffective for failing to object to the testimony of expert witnesses Dr. James Henry and the sexual assault nurse examiner ("SANE") Mindy O'Brien prior to trial. ECF No. 1, PageID.19. He contends that Dr. Henry "testified to things that had nothing to do with [the] trial" and the SANE nurse was not qualified to testify because she had yet to complete her SANE training prior to examining MM. *Id.* Neither of these arguments entitle Solloway to relief.

The Court starts with Dr. Henry's testimony. Solloway appears to contend that Dr. Henry's testimony was irrelevant because it went outside the scope of the factual allegations against him. ECF No. 1, PageID.19. However, under Michigan law, an "expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior . . . ." *People v. Peterson*, 450 Mich. 349, 352, *opinion amended on denial of reh'g*, 450 Mich. 1212 (1995); *see also* Mich. R. Evid. 702. The Michigan Supreme Court further noted that expert testimony about the "common postincident behavior of children who are victims of sexual abuse" is proper "if relevant and helpful." *Id.* at 373; *see also* Mich. R. Evid. 402.

During trial, the prosecution called Dr. Henry in its case in chief to testify about the behavioral patterns of child sexual abuse victims, particularly related to disclosure. ECF No. 15-2, PageID.500–03. Dr.

Henry was admitted as an expert in child sexual abuse, child trauma, child development, and child maltreatment. *Id.* Dr. Henry opined on the complexities surrounding sexual abuse disclosure for children around the age of MM, and children who have been abused by an individual with whom they have a close relationship. ECF No. 15-2, PageID.502. Relevant to MM's testimony that he disclosed Solloway's sexual abuse after experiencing rectal bleeding, ECF No. 15-2, PageID.371, Dr. Henry opined that an accidental disclosure, like MM's, was triggered by "something environmentally out of the child's control that led to the disclosure." ECF No. 15-2, PageID.504. Thus, even though children "initially denied that they were sexually abused," they "ultimately disclosed" the abuse based on "something in the environment that precipitated them telling." *Id.*

Given the relevancy of Dr. Henry's testimony, Solloway has not shown that counsel had a legitimate basis to object to the testimony or preclude Dr. Henry from testifying. *See Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020) ("The failure to raise a meritless claim does not constitute ineffective assistance of counsel."); *Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim.").

Likewise, Solloway's claim that counsel was ineffective for failing to object to the SANE nurse's testimony also fails. While Solloway's argument lacks some clarity, he appears to contend that counsel should

have sought to preclude the SANE nurse from testifying as an expert witness because "she [had not] yet completed her credential to be a pediatric S.A.N.E nurse when she [saw MM] in the hospital." ECF No. 1, PageID.19. This argument belies the state court record because counsel did indeed object to the SANE nurse's qualifications as an expert on this basis. ECF No. 15-2, PageID.408 ("She was not certified as a SANE nurse until October, 2013 . . . this alleged incident occurred in July, before she was certified in October, 2013. So at the time she saw [MM] at the age [MM] was at, she was not certified as a SANE nurse."). The trial court overruled the objection and determined that "the witness clearly [was] qualified by education, training, and experience to provide expert testimony in her area of expertise." *Id.* at PageID.408. Because counsel objected to the SANE nurse testifying as an expert witness, Solloway's argument lacks a factual predicate.

Moreover, to the extent Solloway suggests that counsel was ineffective for failing to move to preclude the SANE nurse's testimony altogether, he has presented no facts or law to this Court suggesting that her testimony would have been inadmissible under federal or state law. The SANE nurse established she was a qualified expert in her field and testified that she examined MM at the hospital shortly after he disclosed the sexual abuse. ECF No. 15-2, PageID.402–09. Her testimony was relevant to the trial court's factual determination of whether Solloway committed the crime of CSC-I. *See* Mich. R. Evid. 402. Solloway has not

shown that counsel's performance was deficient under *Strickland* on this basis. Therefore, he is not entitled to relief on this claim.

*2. Actual Innocence*

In his second and final claim, Solloway argues that he is actually innocent of CSC-I. ECF No. 11, PageID.148. He bases this claim on newly discovered evidence of a private investigator's transcript of an audio recording detailing MM's recanted testimony. ECF No. 11, PageID.149.

Even in view of this new evidence, Solloway is not entitled to relief. Claims of actual innocence based on newly discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.* In *House v. Bell*, 547 U.S. 518 (2006), the Supreme Court declined to answer the question left open in *Herrera*—whether a habeas petitioner may bring a freestanding claim of actual innocence. *See id.* at 554 (quoting *Herrera*, 506 U.S. at 417) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim").

Citing *Herrera* and *House*, the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly-discovered evidence

is not cognizable on federal habeas review. *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) ("[W]e have repeatedly indicated that such claims [of actual innocence] are not cognizable on habeas."); *Bowman v. Haas*, No. 15-1485, 2016 WL 612019, at *5 (6th Cir. Feb. 10, 2016) (holding that a freestanding claim of actual innocence is not cognizable in a non-capital federal habeas proceeding).

Moreover, even if this claim were cognizable on federal habeas review, Solloway's proposed evidence falls short of establishing actual innocence. "'Actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A petitioner must "demonstrate that he factually did not commit the crime" and that "requires him to do more than only undermine the state's case." *Hubbard v. Rewerts*, 98 F.4th 736, 744, 748 (6th Cir. 2024).

On October 21, 2018, investigator Joseph Bruce interviewed MM. *See* ECF No. 15-12, PageID.800. The following conversation transpired:

> Inv. Bruce: [T]here came a time back in, uh, 2013 that your father was accused of doing some things to you. Do you remember?
>
> MM: Yes.
>
> Inv. Bruce: Okay, and you testified in court about what had happened, correct?
>
> MM: Yes.

Inv. Bruce: Okay. Since then, you have told, uh, several people that what you testified to in court actually didn't happen.

MM: Yes.

Inv. Bruce: Okay. Um, is there a reason that you're saying now that, uh, the things that you said happen didn't happen? Is there a reason now that you're saying that they didn't happen?

MM: Because, um . . . Because . . . Sorry, um, back then it never happened, truthfully. Basically, what happened is [inaudible 00:02:50] my mom told me to said [sic] it wrong."

Inv. Bruce: Your . . . mother told you to say those things?

MM: Yes.

ECF No. 15-12, PageID.801.

As an initial matter, the Court notes that the interview transcript holds minimal value because it is not a sworn recanting statement from MM. *Gay v. Sumner Cnty., TN*, No. 20-5350, 2020 WL 5822474, at *1 (6th Cir. Aug. 4, 2020). Nevertheless, even if Solloway had proffered an affidavit, "recanting affidavits are always viewed with extreme suspicion." *See Williams v. Coyle*, 260 F.3d 684, 708 (6th Cir. 2001) (internal quotation marks omitted); *see also Herrera*, 506 U.S. at 417 (rejecting habeas claim of actual innocence because the "affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations," among other reasons).

Additionally, "the skepticism with which a court examines such an affidavit is only heightened when the recanting witness is a family member and the witness may have feelings of guilt or may be influenced by family members seeking to change the witness's story." *United States v. Coker*, 23 F. App'x 411, 412 (6th Cir. 2001). "Skepticism about recantations is especially applicable in cases of child sexual abuse where recantation is a recurring phenomenon, such as where family members are involved and the child has feelings of guilt or where family members seek to influence the child to change the story." *United States v. Miner*, 131 F.3d 1271, 1273–74 (8th Cir. 1997) (cleaned up) (quoting *United States v. Provost*, 969 F.2d 617, 621 (8th Cir. 1992)).

These issues aside, MM's recorded recantation belies the strong evidence presented against Solloway at trial. MM testified that in July 2013, he awoke to find Solloway on top of him and "moving up and down." ECF No. 15-2, PageID.366. He testified that Solloway "flipped [him] over" and placed his "peebug in [his] butt." *Id.* at PageID.367. MM used the term "peebug" to mean a man's penis. *Id.* at PageID.414. MM testified that Solloway told him "if [he] told [his] mother, he would do it again." *Id.* at PageID.368.

Shortly after the sexual assault, MM complained to a summer schoolteacher that he was experiencing rectal bleeding. MM was taken to the hospital. *Id.* at PageID.371–72. The SANE nurse testified that MM told her that "his father molested him." *Id.* at PageID.413. The SANE

nurse also testified that during her examination, she noticed injuries around MM's anus. *Id.* at PageID.420. Particularly, she noticed "jagged and curved" tears that indicated abnormal breaks in the skin consistent with friction. *Id.* at PageID.422–23. Because the tears were jagged, the SANE nursed concluded they were not consistent with the "clean" tears expected to be observed in constipation cases. *Id.* at PageID.423.

Additionally, DNA evidence revealed that Solloway's semen was located on a white fleece blanket taken from MM's bed. *Id.* at PageID.535, 543. MM testified that the white fleece blanket "was under [him]" when the sexual assault occurred. *Id.* at PageID.373. The prosecution also presented other acts evidence of Solloway's prior sexual assault conviction. His nephew, who was nine years old at the time of the assault, testified that Solloway touched his penis and would rub up against him while on top of him in bed. *Id.* at PageID.495. He testified that Solloway told him he would "beat [him] up" if he told anyone. *Id.* at PageID.496. The nephew's testimony highlighted Solloway's parallel behaviors in both sexual assault cases.

Considering this strong physical and testimonial evidence presented at trial, Solloway has not established that he is actually innocent of CSC-I through MM's unsworn recantation. Thus, Solloway is not entitled to habeas relief.

## IV. CONCLUSION

For the above reasons, the Court **DENIES** Solloway's petition for a writ of habeas corpus.

The Court will also deny a certificate of appealability to Solloway. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. The Court **DENIES** Solloway a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right.

The Court **DENIES** Solloway leave to proceed in forma pauperis on appeal because an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

**SO ORDERED**.

Dated: November 9, 2026

s/Terrence G. Berg

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE